Merrimack
No. 87-091

### DAVID HESS

v.

### ROBERT K. TURNER, DIRECTOR, DIVISION OF MOTOR VEHICLES

July 10, 1987

*Shaheen, Cappiello, Stein & Gordon,* of Concord (*Robert A. Stein* and *Katharine L. Klein* on the brief, and *Mr. Stein* orally), for the plaintiff.

*Stephen E. Merrill,* attorney general (*Larry M. Smukler,* assistant attorney general, and *David S. Peck,* assistant attorney general, on the brief, and Mr. Smukler orally), for the defendant.

BATCHELDER, J. In this case, the director of the New Hampshire Division of Motor Vehicles appeals from an order of the Superior Court (*Dalianis*, J.) which reinstated the plaintiff's driving license, after the director had imposed the mandatory ninety-day revocation prescribed by RSA 265:92, I(a)(1) (Supp. 1986) for refusing to take a blood alcohol test. For the following reasons, we reverse the superior court's order and remand.

The plaintiff was stopped on December 13, 1986, by Trooper Gary Sibley, who had observed the plaintiff commit several questionable driving practices. Trooper Sibley testified that he detected a strong odor of alcohol in the plaintiff's vehicle and that he was unsatisfied with the plaintiff's coordination in various field sobriety tests. He arrested the plaintiff for driving while under the influence of alcohol (DWI) and read the plaintiff a standard "Implied Consent Rights" form, including the following: "If you refuse to submit to the tests requested by the law enforcement officer, you will lose your driver's license or nonresident operating privileges for a period of ninety (90) days." The form did not inform the plaintiff that his ninety-day revocation would "not run concurrently with any other penalty imposed . . . ." RSA 265:92, II (Supp. 1986).

The plaintiff prevailed in superior court on an argument that the arresting officer failed to comply with RSA 265:87, I(c) by omitting a warning that the revocation was an additional penalty which would not run concurrently with any other penalty imposed under the motor vehicle laws. That statute requires that, before the officer administers any blood alcohol test, the officer shall "[i]nform [the arrestee] of the consequences of his [or her] refusal to permit a test at the direction of the law enforcement officer."

Before we take up the interpretation of RSA 265:87 and RSA 265:92 (Supp. 1986), a preliminary issue requires comment. The plaintiff contends that the defendant's appeal is moot because last autumn the attorney general recommended that police departments revise their standard Implied Consent Rights form to include the warnings which the plaintiff believes RSA 265:87 requires. However, the way the attorney general chooses, in his discretion, to implement RSA 265:87 does not determine for us what the statute compels the State to do. The attorney general's action has not mooted this case.

We turn now to the issue of whether RSA 265:87 states the warnings an officer must give a driver before the director may revoke the driver's license or privileges and, if it does, whether the

non-concurrent timing of the license revocation for refusing to take the test is one of the consequences which RSA 265:87 compels the officer to disclose. The defendant argues that RSA 265:92, II(a)–(f) (Supp. 1986) specifies the conditions upon which the director is to revoke the license of a driver who refused to take the test. In particular, RSA 265:92, II(f) (Supp. 1986) requires the officer to have warned the driver about revocation, but no part of RSA 265:92 (Supp. 1986) mentions a warning that the revocation is additional to any other penalty. The plaintiff replies that the provisions of RSA 265:92, II(a)–(f) (Supp. 1986) are merely the non-discretionary procedural conditions under which the director initially determines to revoke a license, but that at the driver's administrative hearing the issue is whether the warnings complied with RSA 265:87. The plaintiff then argues, as he did below, that the term consequences, as it is used in RSA 265:87, refers to the sanctions set out in RSA 265:92, II (Supp. 1986), including the fact that the period of revocation shall not run concurrently with any other penalty.

The issue here is whether there was compliance with RSA 263:74, specifying the scope of administrative review, and with RSA 265:92, II(f) (Supp. 1986), which says: "whether the person was informed that his [or her] privilege to drive would be revoked or denied if he [or she] refused to submit to the test . . . ." We believe that RSA 265:92, II(f) and RSA 263:74 control the present case, rather than RSA 265:87, not just because they specify more precisely which consequence shall be told the driver, but also because when we review a revocation proceeding it is only logical that the revocation statutes be the focus of our review. The sanction in RSA 265:87 is imposed on the State, for failing to inform the driver of the several consequences of his refusal. The present appeal arises from a sanction imposed on the driver for refusing to take the test when the arresting officer had complied with RSA 265:92, II(f) (Supp. 1986).

The plaintiff also argues that the non-concurrent imposition of the period of revocation is a direct consequence, and therefore this court's decisions in similar cases require its disclosure to the driver. Essentially this argues that failure to warn of this particular consequence is unfair, as a matter of due process. Although the superior court's order does not speak expressly of due process, the court's perception that the warnings were unfair appears to have been at the core of its ruling.

We have considerable doubt that the plaintiff has properly placed before us the constitutional question of whether the legislature need not require warning of a direct consequence, but in any event, a

review of the case law leads to the conclusion that the timing of the revocation is a consequence that need not be the subject of a warning. In *State v. Ramsden*, 117 N.H. 772, 773, 378 A.2d 1370, 1370 (1977), we rejected a claim under former RSA 262-A:69-m (1975) that the police must inform the arrestee that, when such person was not found guilty of DWI, the director of the division of motor vehicles had the discretion to reinstate a license revoked for refusing to take the test. We stated, "If the legislature had wanted an arrested person to be advised of all possible consequences, it could have so legislated." *Id.* In *State v. Levey*, 122 N.H. 375, 377, 445 A.2d 1089, 1090 (1982), we applied the same reasoning in rejecting a claim that the defendant could not be tried for DWI, subsequent offense, when her guilty plea to an earlier DWI offense was made without any warning that her plea would subject her to enhanced penalties in the future.

In *State v. Jenkins*, 128 N.H. 672, 517 A.2d 1182 (1986), we rejected a claim that the police must warn DWI arrestees that they could be charged with a higher offense if the blood alcohol test revealed an alcohol level greater than 20/100 percent. We held, *inter alia*, that due process does not require that the police apprise the arrestee of all potential consequences. *Id.* at 674–75, 517 A.2d at 1184. It was, of course, implicit in our opinion that the statute itself does not require such a warning.

If the enhancement of a penalty need not be the subject of DWI warnings, then neither must the imposition of a non-concurrent, additional penalty be. Therefore, Trooper Sibley did nót have to inform the plaintiff that the revocation was an independent penalty.

*Reversed and remanded.*

JOHNSON, J., did not sit; the others concurred.